## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

KAYSER PROPERTIES, LLC,

        Plaintiff,

v.                                   Case No. 3:06cv150/MCR/EMT

FIDELITY NATIONAL PROPERTY
& CASUALTY INSURANCE COMPANY, INC.,

        Defendant.

_____/

### ORDER GRANTING SUMMARY JUDGMENT

      In this insurance dispute plaintiff Kayser Properties, LLC, ("Kayser") sues Fidelity National Property & Casualty Insurance Company, Inc., ("Fidelity").   Presently before the court is Fidelity's motion for summary judgment, Kayser's response, and Fidelity's reply.[1] For the reasons given below, the court GRANTS Fidelity's motion and DISMISSES Kayer's complaint, with prejudice.

## BACKGROUND[2]

      Hurricane Ivan struck the Northwest Florida area on or about September 16, 2004.

---

1  See docs. 16 (Fidelity's motion); 17 (Fidelity's memorandum and evidentiary materials in support); 18 (Fidelity's statement of undisputed facts); 21 (Kayser's response and evidentiary materials in support); 20, 22, 29, 34, 38 (Fidelity's additional authority); and 28 (Fidelity's reply).

2  As required by N.D.Fla.Loc.R. 56.1 Fidelity has submitted a separate statement of disputed facts.  Kayser, however, has failed to do so. Pursuant to Local Rule 56.1 the moving party's statement of facts shall be deemed admitted if the opposing party fails to controvert it in the opposing party's own separate statement. Accordingly, other than Paragraph 10 and the first sentence of Paragraph 11 of Fidelity's Statement of Undisputed Facts, which the court considers to constitute conclusions of law rather than statements of fact, the facts herein largely are as presented by Fidelity (or, as appropriate, taken from the pleadings or other evidentiary materials).  Nevertheless, the court views these facts in the light most favorable to plaintiff. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  The court also observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. See Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

On that date Kayser's residential real property located in Destin, Florida, was insured under a Standard Flood Insurance Policy ("SFIP") issued by Fidelity.[3]   The storm caused severe flooding that damaged Kayser's property.  Following the hurricane, Kayser made a claim for damages under the policy.  As a courtesy Fidelity assigned an adjuster to assist Kayser with its claim.  Fidelity determined that Kayser was due $7,675.46 for building losses and $653.20 for contents losses and paid these amounts to Kayser on October 15, 2004. Kayser has demanded additional amounts under its policy for damages caused by Hurricane Ivan that Fidelity has refused to pay.

Invoking the court's diversity jurisdiction, Kayser filed its complaint for declaratory relief on April 12, 2006.  The complaint alleges that in a letter dated April 11, 2005, Insurance Management Solutions Group ("IMSG"), on behalf of Fidelity, denied Kayser's claim for certain Hurricane Ivan losses under its SFIP.[4]   According to Kayser, the April 11 letter recites factually incorrect information regarding the property's flood zone rating and elevation as the basis for the denial of the claim. As relief, Kayser seeks a declaration of the rights of the parties and entry of an order ruling that Fidelity has the duty to pay certain losses to Kayser under the SFIP.

In its motion for summary judgment Fidelity argues that in order to recover under its

---

3  The National Flood Insurance Act of 1968, 42 U.S.C. § 4001, et seq., established the National Flood Insurance Program ("NFIP"). The Federal Emergency Management Agency ("FEMA"), which is charged with administering the NFIP, by regulation has promulgated the SFIP and provided for marketing and claims adjustment by private insurers operating as "Write-Your-Own" ("WYO") companies. 44 C.F.R. § 62.23. The WYO companies issue SFIPs in their own names as insurer, and they arrange for the adjustment, settlement, payment and defense of all claims arising from the policies, with the federal government acting as the guarantor and reinsurer. See § 61.13(f); § 62.23(d); see also Gowland v. Aetna, 143 F.3d 951, 953 (5th Cir. 1998). Thus in issuing SFIPs WYO companies act as the fiscal agent of the United States government. See Sanz v. United States Security Insurance Co., 328 F.3d 1314, 1316 (11th Cir. 2003). Congress has specifically authorized FEMA to appoint service agents to assist the NFIP in issuing and processing flood insurance applications and claims. See 42 U.S.C. § 4071 (authorizing FEMA director to make arrangements to carry out flood insurance program by utilizing "insurance companies and other insurers, insurance agents and brokers, and insurance adjustment organizations, as fiscal agents of the United States.") Federal regulations also provide that "a WYO Company shall use its own customary standards, staff and independent contractor resources, as it would in the ordinary and necessary conduct of its own business affairs . . . ." 44 C.F.R. 62.23(e).

  A copy of Kayser's SFIP, No. 09-7700068374, may be found at Document # 1-2 of the docket. Inter alia, it reflects coverage limits of $250,000 for losses to the building and $100,000 for losses to contents.

4  See doc. 1-3.

SFIP Kayser was required, but failed, to timely submit a complete, signed and sworn proof of loss statement in support of any claim above the amounts previously paid.  Additionally, Fidelity contends that Kayser was required, but failed, to bring suit within one year of the April 11, 2005, denial of its claim.

Responding in opposition, Kayser maintains that Fidelity should be estopped from denying that a proof of loss statement was filed. According to Kayser, not only did Fidelity mislead it into believing that the filing of a proof of loss statement was both unnecessary and futile but also Fidelity cannot show that it was prejudiced by the lack of such statement. Kayser also argues Fidelity has not come forward with any evidence establishing that it did not file this case within one year of the denial of its claim.[5]  Finally, Kayser argues that this action does not involve a contested claim for additional benefits payable by FEMA under the flood insurance policy; rather, Kayser asserts, the suit is against Fidelity itself and seeks a declaration that the company engaged in "'bait and switch'" tactics[6] or "based its denial of Plaintiff's coverage on false and incorrect information."[7]

In reply, Fidelity argues that pursuant to Eleventh Circuit authority the proof of loss requirement must be strictly construed and, furthermore, that the law is clear that claims of estoppel and waiver like Kayser's cannot succeed.  Fidelity also asserts that because the pertinent regulation requires filing a lawsuit within one year of the date of the written denial, which Kayser did not do, this suit is untimely brought.

---

5 Kayser maintains that simply because the denial letter – which was sent by certified mail – bears the date April 11, 2005, does not mean that such date is the denial date for the claim.  Kayser argues that the denial date should be the date on which it actually received the certified letter.  Because Fidelity has not produced a receipt showing this date, Kayser contends that Fidelity's argument that this action was not timely filed fails for lack of adequate proof.

6 Kayser asserts that "it is not foreclosed from suing Defendant in tort or for breach of fiduciary relationship or for some other wrongful act IF Defendant fails to lawfully pay on the policy limits ONCE the rights of the parties under the contract are declared." (Doc. 21 at 2, 4).

7 In concluding its response Kayser asks the court to deny Fidelity's motion for summary judgment; additionally, it requests that the court "[g]rant Plaintiff thirty (30) days to amend its complaint by adding additional counts that would state causes of action against Defendant dependent upon Plaintiff's action asking this Court to declare that Defendant, Fidelity National Property and Casualty Insurance Company, Inc. has the duty to cover Plaintiff's losses under the Flood Policy. . . ." (Doc. 21 at 8).

Case No. 3:06cv150/MCR/EMT

**DISCUSSION**

The SFIP issued to Kayser by Fidelity requires the insured to submit proof of loss to the company in the form of a signed and sworn statement of the amount claimed under the policy.[8]  The proof of loss must be presented within sixty days after the loss and must provide specific information necessary for the insurance company to process the claim. Further, the policy provides that as a courtesy the adjuster hired by the insurance company may furnish the insured with a proof of loss form and help with its completion; however, the policy cautions that even if the adjuster does not provide the form or any assistance the insured must nevertheless timely send the company proof of loss.[9] Additionally, under the SFIP an insured may not file suit for coverage unless it has complied with all requirements of the policy.

Strict adherence to the proof of loss requirements is a condition precedent to recovery under a SFIP. See Sanz, 328 F.3d at 1318; Suopys v. Omaha Property and Casualty, 404 F.3d 805, 810 (3rd Cir. 2005); Dawkins v. Witt, 318 F.3d 606 (4th Cir. 2003);

---

8  Section J.3 of Article IX of Kayser's SFIP requires the insured to:

> 3.  Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you and furnishing us with the following information:
>   a. The date and time of the loss;
>   b. A brief explanation of how the loss happened;
>   c. Your interest in the property damaged (for example, "owner") and the interest, if any, of others in the damaged property;
>   d.  The actual cash value or replacement cost, which is appropriate, of each damaged item of insured property and the amount of damages sustained;
>   e. Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
>   f.  Details as to any other contracts of  insurance covering the property, whether valid or not.
>   g.  Details of any changes in ownership, use, occupancy, location or possession of the insured property since the policy was issued;
>   h. Details as to who occupied any insured building at the time of loss and for what purpose; and
>   i.  The amount you claim is due under this policy to cover the loss, including statements concerning:
>    (1) The limits of coverage stated in the policy; and
>    (2) The cost to repair or replace the damaged property (whichever costs less).

SFIP Article IX.J.3 (see doc. 1-2, p. 15).

9 SFIP Article IX.J.6 (see doc. 1-2, p. 15).

Mancini v. Redland Insurance Co., 248 F.3d 729, 733-34 (8th Cir. 2001). Substantial compliance is not sufficient; rather, an insured must completely satisfy the proof of loss requirements, including the requirement that the statement be signed and sworn, before an insured can receive benefits under a SFIP. See Sanz, 328 F.3d at 1317. The proof of loss requirements may be waived, but to be effective the waiver must be made by the Federal Insurance Administrator in writing. See id. at 1318-19; see also Title 44 C.F.R. §§ 61.13(d); SFIP Article IX.D (doc. 1-2 at 13).

The court first addresses Fidelity's contention that Kayser failed to timely file this suit. In pertinent part, Kayser's SFIP provides that if the insured elects to sue, he must "start the suit within 12 months *from the date we mailed you notice* that we have denied your claim, or part of your claim . . . ." Article IX.R, Conditions for Filing a Lawsuit (see doc. 1-2, p. 17) (emphasis added); see also Title 42 U.S.C. § 4072 (providing that insured may bring suit in federal court "within one year *after the date of mailing of notice* of disallowance or partial disallowance" of his flood insurance claim) (emphasis added). The language of Kayser's SFIP, and the statute, is clear and unambiguous: a lawsuit filed in federal court challenging the disallowance of a flood insurance claim must be commenced within one year after the date of mailing the denial. Here, while the denial letter bears the date April 11, 2005, Fidelity has not come forward with any evidence to establish the date on which the letter was mailed to Kayser.[10] Accordingly, the court concludes that Fidelity has not met its burden of showing that no genuine issue of material fact exists with respect to its assertion that Kayser failed to timely file this lawsuit. See Fed.R.Civ.P. 56; see also

---

[10] In arguing that the action is untimely, Fidelity relies on the language in the relevant regulation, Title 44 C.F.R. Pt. 61, App. A(1), Art. VII(R), that states in pertinent part that "[i]f you do sue, you must start the suit within one year *after the date of the written denial* of all or part of the claim . . . ." (emphasis added). Had the regulation required that the suit be filed within one year "of" the written denial, the court might be inclined to interpret the regulation as Fidelity does, i.e, that the suit in this case must have been filed no later than April 11, 2006. As the court reads the regulation, however, Kayser's April 12, 2006, filing arguably satisfies the requirement that the suit be filed within one year "after the date of the written denial." April 12, 2005, was the first day "after" the date of the written denial on April 11, 2005, and April 12, 2006, falls within one year of that date. Furthermore, even if it accepted Fidelity's reading of the regulation, the court would be obliged to consider the language of the policy and the statute also and to resolve any ambiguity regarding the requirements for filing suit in Kayser's favor. See Castleberry v. Goldome Credit Corp., 418 F.3d 1267, 1272 (11th Cir. 2005) (noting that in interpreting insurance contracts courts historically have applied the rule of contra proferentem, resolving ambiguities against the insurer).

Case No. 3:06cv150/MCR/EMT

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Summary judgment and dismissal of the action on this ground therefore is not appropriate.

Fidelity also seeks summary judgment on the ground that Kayser failed to supply the required proof of loss statement.  Kayser does not dispute that it failed to file a proof of loss statement but contends that Fidelity should be estopped from asserting this defense.[11]  In support, Kayser complains that it advised Fidelity that the April 11, 2005, letter cited inaccurate factual statements as reasons for the denial of coverage, but its efforts to have the errors corrected were to no avail.[12] Kayser also cites a statement allegedly made by an IMSG representative to Kayser's construction and design consultant not to bother sending additional estimates because payment would not be authorized.[13] Additionally, Kayser points to a letter dated October 6, 2004, sent to it by a claims company indicating that the NFIP had decided to waive the proof of loss requirement.[14] Further, referring to emails between IMSG and FEMA,[15] Kayser apparently asserts that it effectively was "not even allowed to submit a Proof of Loss" because IMSG had already communicated false and unfounded information to FEMA regarding Kayser's claim.

Assuming <u>arguendo</u> that estoppel is available against Fidelity in the context of this

---

11  In a memorandum dated September 24, 2004, FEMA's Acting Federal Insurance Administrator David I. Maurstad granted a limited waiver of the proof of loss requirement for certain SFIP policyholders.  (<u>See</u> doc. 17-2).  Although Kayser does not argue that this memorandum waived entirely the proof of loss requirement for its claim, the court notes that this argument has been made in other cases and rejected. <u>See</u> <u>Vanderveen v. Allstate Insurance Co.</u>, 3:05cv469/WS (N.D. Fla. January 29, 2007); <u>Brown v. USAA General Indemnity Co.</u>, 3:06cv191/RS (N.D.Fla. February 9, 2007); <u>Word v. USAA General Indemnity Co.</u>, 3:06cv303/RS (N.D.Fla. February 9, 2007); <u>McKee v. USAA General Indemnity Co.</u>, 3:06cv156/MCR/EMT (N.D.Fla. April 26, 2007); and <u>Loree v. Fidelity National Property & Casualty Co.</u>, 3:06cv250/MCR/EMT (N.D.Fla. May 15, 2007).

12 <u>See</u> doc. 21-5.

13 <u>Id.</u>

14 <u>See</u> doc. 21-6.

15 <u>See</u> doc. 21-7.

Case No. 3:06cv150/MCR/EMT

NFIP case[16] and taking as true Kayser's allegations, the court concludes that the actions and statements described by Kayser do not support applying the doctrine in this instance. To establish that equitable estoppel should apply, Kayser must establish these three elements of a traditional equitable estoppel claim: (1) "words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things"; (2) "wilfulness or negligence with regard to the acts, conduct or acquiescence"; and (3) "detrimental reliance by the other party upon the state of things so indicated." Tefel v. Reno, 180 F.3d 1286 (11th Cir. 1999). A claim of estoppel against the government further requires establishing that the government or its agents engaged in affirmative misconduct. See United States v. McCorkle, 321 F.3d 1292, 1297 (11th Cir. 2003). Affirmative misconduct requires more than governmental negligence or inaction. Id. The Eleventh Circuit has also observed the that Supreme Court's decisions indicate that even if equitable estoppel may be asserted against the government, its application is only warranted in extreme cases where "affirmative and *egregious* misconduct by government agents exists." Sanz, 328 F.3d at 1319-20 (emphasis added). Here, none of the actions complained of by Kayser may be fairly characterized as rising to the level of "affirmative and egregious" misconduct.[17] Id. Rather, at most the actions may be described as negligent.

---

16 A claim against a WYO insurer is a claim against the federal government for the purposes of applying the doctrine of equitable estoppel. See Gowland, 143 F.3d at 955. In Sanz, the Eleventh Circuit commented that "the Supreme Court has yet to announce a per se rule that equitable estoppel is never available against the Government" but also noted that the Supreme Court "consistently has denied efforts by litigants to estop the Government from raising defenses based on claimants' failures to comply with governmental procedures due to misinformation from government agents." Sanz, 328 F.3d at 1319. Recently the Eleventh Circuit again questioned the availability of equitable estoppel against the government, noting that "it is far from clear that the doctrine of equitable estoppel may even be applied against a government agency. The Supreme Court has never held that it may be." Savoury v. U.S. Att'y Gen., 449 F.3d 1307, 1318 (11th Cir. 2006).

17 As previously noted, with respect to applying the doctrine of equitable estoppel, a claim against a WYO insurer is a claim against the federal government. See Gowland, 143 F.3d at 955. Additionally, federal regulations provide that WYO companies shall act as the fiscal agents of the United States government and, in so acting, shall use their own customary independent contractor resources as they would in the ordinary conduct of their own business affairs. § 62.23(e) and (g). As Kayser's claim against Fidelity in effect is a claim against the federal government and as the actions of Fidelity's agents, adjusters, and other independent contractors arguably should be deemed those of Fidelity, the court concludes that for equitable estoppel purposes IMSG and other contractors used by Fidelity should be treated as governmental actors or agents.

In summary, Kayser was required to file a proof of loss statement no later than September 16, 2005,[18] in order to preserve its right to sue. It failed to do so and it has failed to establish that Fidelity should be estopped from asserting this ground for denying coverage under the SFIP.  Accordingly, Kayser's suit is barred.  See Sanz, 328 F.3d at 1320 (affirming district court's grant of motion as a matter of law and noting that such result was "mandated by federal regulations and Supreme Court caselaw.").  Because the evidence before the court shows that there is no genuine issue of material fact remaining for trial and that Fidelity is entitled to judgment as a matter of law, Fidelity's motion for summary judgment shall be granted.[19]  See Celotex Corp., 477 U.S. at 322.

One matter remains for the court's consideration.  By order dated March 12, 2007, the court directed the parties to file a status report advising whether they had completed mediation as ordered and, in the event they had not, to show cause why sanctions should not be imposed for the failure to comply with an order of the court.  In a joint response, the parties advise that they did not submit to mediation and explain that they did not do so, in part because they believed it would not be productive.  Counsels' explanation for ignoring an order of this court is wholly unacceptable.[20]  Given the resolution of this case, however,

18 Pursuant to Mr. Maurstad's September 24, 2004, memorandum Kayser had until September 16, 2005, in which to file its proof of loss.

19 As previously noted, Kayser asserts that upon entry of a declaration of the parties' rights under the SFIP it should be able to seek redress in tort and asks for leave to amend its complaint to add claims based on Fidelity's duty, as declared by the court, to pay its losses under the SFIP.  The court's determination that Kayser's failure to timely file a proof of loss precludes this suit, and thus that this action should be dismissed, should render Kayser's request to amend its complaint moot. In any event, Kayser's request – presented only in its response to the motion for summary judgment – is not properly before the court as motion for leave to amend.

Even if Kayser had appropriately moved for leave to amend its complaint and sought to assert claims in tort (for example, pertaining to its claim of "bait and switch" tactics in the procurement of its policy), the court would be disinclined to grant the motion.  Pursuant to the court's final scheduling order of August 10, 2006, Kayser had until August 18, 2006, in which to amend its pleadings. Although Kayser appears to have been well aware of the factual basis for any additional claims prior to that date and contemplated asserting those claims, it failed to timely amend its pleadings or to request more time in which to do so.  Accordingly, no good cause would exist under Fed.R.Civ.P. 16(b) to modify the final scheduling order at this late date. Furthermore, denial would be appropriate under Rule 15(a) based on Kayser's undue delay.  See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

20 See also N.D.Fla.Loc.R. 16.1(b).

Case No. 3:06cv150/MCR/EMT

the court will not proceed further with this matter.  Nevertheless, counsel are cautioned that such conduct in future cases before this court will not be met with similar leniency.  The court expects counsel to adhere to the court's rules and orders.

Accordingly, it is ORDERED:

1.      Defendant Fidelity National Property & Casualty Insurance Company, Inc.'s motion for summary judgment (doc. 16) is GRANTED, and plaintiff Kayser Properties, LLC's claims are DISMISSED, with prejudice**.**

2.      Consistent with this order, the clerk of court is directed to enter summary judgment in favor of defendant.  Plaintiff shall take nothing further by this action and hence goes without day.

3.      Costs shall be taxed against plaintiff.

**DONE and ORDERED** this 21st day of May, 2007.


s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**